IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TROY M. DIXON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1403 (MN) |
| | ) | |
| ROBERT MAY, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION[1]</u>

Troy M. Dixon. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE.
Attorney for Respondents.

September 27, 2021
Wilmington, Delaware

---

[1]      This case was re-assigned from the Honorable Colm F. Connolly's docket to the undersigned's docket on September 25, 2018.

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition and Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by Petitioner Troy M. Dixon ("Petitioner").  (D.I. 1; D.I. 26).  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 29; D.I. 33).  For the reasons discussed, the Court will deny the Petition.

I.    **BACKGROUND**

> The State's theory was that [Petitioner] fired shots into a car four days after certain events took place at the Rebel nightclub and the Thunderguards clubhouse where another individual, Kevin Bell ("Bell"), had been fatally shot. The car [Petitioner] allegedly fired upon contained three occupants: Darren Brown ("Brown"), the driver, Maurice Harrigan ("Harrigan"), a long-time associate of Bell's, and Aaron Summers ("Summers"). Brown was driving Harrigan and Summers to Bell's funeral when [Petitioner] allegedly shot at the back of the car hitting Summers in the back of the neck.

*Dixon v. State*, 2014 WL 4952360, at *1 (Del. Oct. 1, 2014).

Wilmington police arrested Petitioner on November 8, 2012 in connection with a shooting. (D.I. 29 at 5-6).  A New Castle County grand jury indicted Petitioner on charges of first degree assault; possession of a firearm during the commission of a felony ("PFDCF"); disregarding a police officer's signal; resisting arrest; and possession of a firearm by a person prohibited ("PFBPP").  (D.I. 29 at 1).  Petitioner later moved to sever the PFBPP charge from the other charges.  The Superior Court granted his motion and severed his case for separate trials – an "*A* case" and a "*B* case."  The *A* case forms the basis for this proceeding.  The *B* case was the basis for another habeas proceeding before this Court:  *Dixon v. State*, C.A. No. 17-1402-MN.

The *A* case proceeded to trial on September 24, 2013.  (D.I. 30-1, Entry No. 16).  A Delaware Superior Court jury found Petitioner guilty of second degree assault (lesser-included offense of first degree assault), PFDCF, and resisting arrest.  The Superior Court sentenced Petitioner to an aggregate sentence of twenty-one years at Level V, suspended after eighteen years

1

for decreasing levels of supervision.  (D.I. 30-2 at 21-22).  Petitioner appealed, and the Delaware

Supreme Court affirmed on October 1, 2014.  *See Dixon,* 2014 WL 4952360, at *1.

On December 2, 2014, Petitioner filed a *pro se* motion for post-conviction relief pursuant

to Delaware Superior Court Criminal Rule 61 ("*pro se* Rule 61 motion").  (D.I. 30-17).  The

Superior Court appointed post-conviction counsel to represent him.  On September 25, 2015, post-

conviction counsel filed an amended Rule 61 motion ("amended first Rule 61 motion").  (D.I. 31-

20 in *Dixon*, Civ. A. No. 17-1402).  The State filed a reply to the amended Rule 61 motion on

January 29, 2016.  (D.I. 30-19).  Petitioner filed a *pro se* reply on February 25, 2016, and

supplemented that reply on June 16, 2016.  (D.I. 30-1, Entry Nos. 49, 52).  On June 20, 2016,

Petitioner filed a *pro se* motion to compel and, on June 27, 2016, a *pro se* motion to correct his

sentence under Superior Court Criminal Rule 35.  (D.I. 30-1, Entry Nos. 51, 53).

On October 11, 2016, the Superior Court denied both the amended Rule 61 motion and the

Rule 35 motion.  *See State v. Dixon*, 2016 WL 5929251, at *5 (Del. Super. Ct. Oct. 11, 2016).

Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on

June 8, 2017.  *See Dixon v. State*, 164 A.3d 919 (Table), 2017 WL 2492565 (Del. June 8, 2017).

Petitioner filed the instant habeas Petition in this Court on October 6, 2017.  (D.I. 3).  On

October 15, 2018, Petitioner filed in the Delaware Superior Court a second *pro se* Rule 61 motion

("second *pro se* Rule 61 motion").  (D.I. 30-21).  On January 24, 2019, this Court granted

Petitioner's unopposed motion to stay the instant proceeding.  (D.I. 19).  The Superior Court denied

Petitioner's second *pro se* Rule 61 motion on June 18, 2019.  (D.I. 30-27).  Petitioner appealed,

and the Delaware Supreme Court dismissed his appeal as untimely on December 11, 2019.

(D.I. 30-15).

The Court lifted the stay in this proceeding on February 27, 2020 and issued an Order

directing Petitioner to file an amended petition to include all the grounds he wished to pursue or

to file a notice stating that he was not going to amend his Petition.  (D.I. 24).  Petitioner filed an Amended Petition on April 15, 2020.  (D.I. 26).  The State filed an Answer, to which Petitioner filed a Reply on August 5, 2020.  (D.I. 33)

On September 9, 2020, the State informed the Court in writing that, on September 4, 2020, the Superior Court essentially reissued its June 6, 2019 decision denying Petitioner's second *pro se* Rule 61 motion so that he could appeal the issues raised in the second Rule 61 motion.  (D.I. 34). The Court again stayed the case pending the Delaware Supreme Court's ruling.  (D.I. 35; D.I. 37). On August 4, 2021, the Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's second *pro se* Rule 61 motion.  (D.I. 38).  Petitioner filed a Motion to Lift the Stay, which the Court granted on August 19, 2021.  (D.I. 39; D.I. 40).

## II.   GOVERNING LEGAL PRINCIPLES

### A.   The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).   A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts.  *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).   Although treated as technically exhausted, such claims are nonetheless procedurally defaulted.   *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but

4

procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under *Strickland*. *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C.   Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly

---

[2]     A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   <u>DISCUSSION</u>

Petitioner's timely filed October 2017 Petition asserts thirteen grounds for relief. (D.I. 3). Petitioner's Amended Petition, filed in April 2020, asserts seven grounds for relief. (D.I. 26). When the Court provided Petitioner with an opportunity to amend his Petition, it directed him to include in the Amended Petition all the grounds he wished to raise. (D.I. 24). The State's Answer addresses all thirteen grounds for relief as asserted in the original Petition. (D.I. 29). In his Reply to the State's Answer to the Amended Petition, Petitioner explicitly asserts that his Reply only discusses the seven grounds in his Amended Petition. (D.I. 33 at 2). The Court views Petitioner's clear and specific acknowledgement that his Amended Petition only includes seven grounds for relief as demonstrating his intent to withdraw the other six claims that he included in his original

Petition.  Therefore, the Court will only address the seven claims that are asserted in the Amended Petition: (1) the Superior Court erred by not giving a limiting instruction after the admission of prior bad acts evidence under Rule 404(b); (2) defense counsel provided ineffective assistance by foregoing a Rule 404(b) limiting instruction; (3) the Superior Court erred by not declaring a mistrial after a witness made "unsolicited highly prejudicial hearsay statements" in response to the State's questioning; (4) the Superior Court erred by not declaring a mistrial after two trial spectators interacted with several jurors; (5) appellate counsel and post-conviction counsel both provided ineffective assistance by failing to raise an insufficiency of evidence argument on direct appeal and in Petitioner's Rule 61 proceeding; (6) appellate counsel provided ineffective assistance by failing to cite to trial transcripts when presenting an issue in Petitioner's direct appeal; and (7) the Superior Court erred by admitting Brown's and Harrigan's photo lineup identifications as evidence.

### A.     Claim One:  Superior Court's Failure to Provide Limiting Instruction

> At trial, the [Superior] Court permitted the State to present evidence that [Petitioner] had an argument at a bar [the Rebel] with someone who would later be the driver of the car in which the victim in this case was shot for the purpose of establishing intent and motive under D.R.E. 404(b). […] [Petitioner's] counsel had objected to the introduction of evidence under Rule 404(b). However, the [Superior] Court overruled the objection and permitted the State to present the Rule 404(b) evidence. The [Superior] Court then proposed a cautionary instruction, to which [Petitioner's defense] counsel responded, "I prefer that it not be given at all. I think that it emphasizes events that I don't want to happen." Recognizing [Petitioner's defense] counsel's tactical decision, the [Superior] Court did not give the jury any cautionary instruction.

*Dixon*, 2016 WL 5929251, at *3.

In Claim One, Petitioner contends that the Superior Court erred by not providing a limiting jury instruction after the State introduced the evidence of Petitioner's argument with the driver of the car pursuant to D.R.E. 404(b).  Petitioner contends that the limiting instruction was mandatory

and that failing to provide the instruction resulted in the jury improperly using prior bad act evidence to convict him.  Although Petitioner did not present this argument as a freestanding independent claim to the Delaware state courts, he did present the argument as the premise of an ineffective assistance of counsel claim in his amended Rule 61 motion.  (D.I. 31-20 at 5 in *Dixon*, Civ. A. No. 17-1402-MN).  Specifically, he argued that defense counsel provided ineffective assistance by failing to insist on the Rule 404(b) limiting instruction because the instruction is mandatory and not one of election.  (*Id*.).  The Superior Court denied the ineffective assistance of counsel argument, explaining that, given the circumstances of his case, the Rule 404(b) limiting instruction was not mandatory under Delaware Supreme Court precedent.  *See Dixon*, 2016 WL 5929251, at *3.  The Delaware Supreme Court affirmed that decision.  *See Dixon*, 2017 WL 2492565, at *1.

As a general rule, state court evidentiary rulings are not cognizable on federal habeas review unless the petitioner shows the admission of evidence caused a fundamental unfairness at trial in violation of his due process rights.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Claim One asserts an error of Delaware law, and Petitioner has failed to demonstrate any related deprivation of a due process right.  Therefore, the Court will deny the Delaware evidentiary challenge in Claim One for failing to assert an issue cognizable on federal habeas review.

### B.    Claim Two:  Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that defense counsel provided ineffective assistance by declining the Superior Court's offer to provide a limiting instruction to the jury when the aforementioned prior bad act evidence of the argument at the Rebel bar was admitted under Rule 404(b).  Petitioner asserts that the prior bad act evidence was insufficient to prove his motive for the shooting, and the lack of an instruction prejudiced him.  Petitioner presented this argument to the Superior Court in his amended Rule 61 motion.  The Superior Court denied the argument as

9

meritless, and the Delaware Supreme Court affirmed the Superior Court "for the reasons stated in its decision." *Dixon*, 2017 WL 2492565, at *1. Given these circumstances, Claim Two only warrants relief if the Superior Court's decision was contrary to, or an unreasonable application of clearly established federal law. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment); *Y1st v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

The established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* To sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegation. Consequently, the Superior Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Richter*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Superior Court's denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.[3] *Id*. "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

---

[3]     As explained in *Richter*,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

11

After reviewing the record, the Court concludes that the Superior Court reasonably determined that defense counsel's act of foregoing a limiting instruction was a matter of trial strategy. Pursuant to D.R.E 105, a Rule 404(b) limiting instruction is mandatory only when the evidence presented at trial consists of other past crimes. *See Weber v. State*, 547 A.2d 948, 962-63 (Del. 1988). When Rule 404(b) evidence is introduced for a limited purpose and does not involve prior other crimes, a curative instruction does not need to be given unless requested by the parties. *Id*. at 963. Under established Delaware precedent, there is a distinction between limiting instructions for evidence of other crimes – which are mandatory – and limiting instructions for evidence of wrongs or acts that are not necessarily crimes – which are discretionary. *See Wooters v. State*, 625 A.2d 280 (Table), 1993 WL 169129, at *2 (Del. 1993). Because the evidence introduced at Petitioner's trial dealt with prior acts, not crimes, defense counsel had the discretion to request or decline a Rule 404(b) limiting instruction.

When viewed within the foregoing legal framework and in context with the record, defense counsel's decision to forego a Rule 404(b) limiting instruction did not amount to deficient performance. In Petitioner's case, and over his objection, the State was permitted to introduce evidence of an argument at the Rebel, which occurred four days prior to the shooting, for the limited purpose of establishing intent and motive under Rule 404(b). (D.I. 30-5 at 50-62). Prior to the evidence being admitted, the Superior Court performed an analysis pursuant to the requirements of *Getz v. State,* 538 A.2d 726, 734 (Del. 1988) to determine the admissibility of the evidence under Rule 404(b). (D.I. 30-5 at 55-61). During the *Getz* analysis, the Superior Court characterized the conduct as a prior act of Petitioner, not as a prior crime, noting that "it is not the most serious incident in the world, what has been described to me, the spilling of beer on somebody at the Rebel nightclub." (D.I. 30-5 at 60). The Superior Court offered defense counsel the opportunity to include the pattern 404(b) limiting instruction to the jury and properly explained

that the instruction did not have to be provided.  (*Id*. at 61).  Defense counsel requested that the instruction not be given.  (*Id*. at 30).  As defense counsel explains in his Rule 61 affidavit, he believed that the limiting instruction would highlight the prior act evidence further harming Petitioner.  (D.I. 30-18 at 1).  As the instruction was discretionary in this case, defense counsel's conclusion that the instruction would have drawn more attention to the evidence than stating nothing "is the sort of strategic decision made by trial counsel that falls well within the wide range of reasonable professional assistance."  *United States v. Walker*, 718 F. Supp. 2d 576, 588 (M.D. Pa. 2010), *vacated on other grounds, Walker v. United States,* 567 U.S. 949 (2012); *Buehl v. Vaughn*, 166 F.3d 163, 170 (3d Cir. 1999) ("[i]n some circumstances, [a request for a cautionary] instruction may be strongly advisable; in others, counsel may reasonably conclude that it is strategically preferable to omit such a request because the instruction might have the undesired effect of highlighting" damaging evidence.).

Additionally, Petitioner has failed to demonstrate that he suffered prejudice from defense counsel's decision to forego a limiting instruction.  The State presented a strong circumstantial case that Petitioner shot Summers.  Harrigan identified Petitioner from a police photo lineup as the individual he had argued with at the Rebel nightclub before the shooting.  (D.I. 30-3 at 264-66). Brown testified that a front seat passenger in a black Crown Victoria shot at his vehicle and pointed out Petitioner in a police lineup as having the same complexion and beard as the passenger. (D.I. 30-3 at 91-94; D.I. 30-5 at 17-22).  Petitioner was a passenger in the black Crown Victoria that police chased after the shooting and he jumped from the Crown Victoria and ran from the police while clutching his midsection with his hand.  (D.I. 30-10 at 6-7, 9).  Petitioner then threw an object and police recovered a semi-automatic piston from the area.  (*Id*.).  The police also recovered five shell casings and two bullets at the scene of the shooting, and a sixth shell casing at the hospital.  (D.I. 30-5 at 27-28, 78-79, 84).  Given these circumstances, Petitioner cannot

demonstrate a reasonable probability that the outcome of the proceeding would have been different but for defense counsel's decision to forego a limiting instruction. Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

C.      **Claim Three: The Superior Court's Refusal to Declare a Mistrial After Harrigan's Statement**

During Petitioner's trial, Harrigan testified that he was riding in the vehicle with Summers after attending Bell's funeral when Summers was shot. (D.I. 30-3 at 205-06). Harrigan recalled that, a few days before the funeral, he had an altercation with Bell at the Rebel nightclub. (D.I. 30-3 at 207). Harrigan said that Petitioner became involved in the dispute, but he and Petitioner shook hands at the end of the evening. (D.I. 30-3 at 208-09). Harrigan said that he went home and became ill after too much drinking. (D.I. 30-3 at 209). The State then asked Harrigan, "at some point did you learn that [Bell] had been killed?" Harrigan replied, "Yeah" and added, "The next morning somebody was calling me, like, 'Yo, you know [Bell] got killed and they trying to say you did it.'" (D.I. 30-1 at 210). Defense counsel immediately objected and moved for a mistrial because the jury could interpret the hearsay statement as accusing Petitioner of shooting Summers in retaliation for Harrigan shooting Bell. (D.I. 30-3 at 211, 213-12). The State responded that it would not argue to the jury that Petitioner shot Summers in retaliation for Bell's shooting. (D.I. 30-3, at 219-20). The Superior Court denied the motion for a mistrial, explaining, *inter alia*, that it planned to strike Harrigan's answer as unresponsive to the question asked and instruct the jury to disregard the statement. (D.I. 30-3 at 231).

In Claim Three, Petitioner contends that the Superior Court abused its discretion by not granting his request for a mistrial after Harrigan's "highly prejudicial hearsay statement." He argues that the Superior Court's instruction to the jury to ignore the statement was insufficient to correct the prejudice to him. Petitioner presented this Claim to the Delaware Supreme Court on

14

direct appeal, which affirmed the Superior Court's denial of his request for a mistrial.  *See Dixon*, 2014 WL 4952360, at *2.  Given the Delaware Supreme Court's adjudication, Claim Three only warrants relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The established law governing mistrial claims was articulated in *United States v. Perez*, 22 U.S. 579 (1824) and its progeny.  Under *Perez*, trial judges may declare a mistrial "whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity" for doing so.  *Id*. at 580.  "The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."  *Renico v. Lett*, 559 U.S. 766, 774 (2010).  Since *Perez*, the United States Supreme Court has "clarified that the 'manifest necessity' standard cannot be interpreted literally, and that a mistrial is appropriate when there is a high degree of necessity."  *Id*.  "The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge."  *Id*.

In Petitioner's case, the Delaware Supreme Court applied Delaware law when it reviewed the Superior Court's denial of Petitioner's motion for a mistrial, stating that "granting a mistrial is an extraordinary remedy, warranted only when there is manifest necessity and no meaningful and practical alternatives."  *Dixon*, 2014 WL 4952360, at 83.  Because this standard is consistent with the standard articulated in *Perez*, the Court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law.  *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases which articulated the proper standard derived from Supreme Court precedent).

The Court's inquiry is not over, however, because it must determine if the Delaware Supreme Court reasonably applied federal law when it affirmed the Superior Court decision. On habeas review

> [the] question is not whether the trial judge should have declared a mistrial. It is not even whether it was abuse of discretion for her to have done so . . . The question under AEDPA instead is whether the determination of the [state court] that there was no abuse of discretion was an "unreasonable application of . . . clearly established law."

*Renico*, 559 U.S. at 772-72. An improper witness statement rises to the level of a due process violation if, when viewed in the context of the entire trial, the statement is of sufficient significance so as to deny the petitioner of a fair trial because it prevented the jury from arriving at a fair and impartial verdict. *See Greer v. Miller*, 483 U.S. 756, 765 (1987) (applied in the context of prosecutorial misconduct); *Arizona v. Washington*, 434 U.S. 497, 511-12 (1978). The Third Circuit has identified three factors to consider when determining if a trial court abused its discretion in denying a mistrial: (1) whether the witness' remarks were pronounced and persistent, creating a likelihood of misleading and prejudicing the jury; (2) the strength of the other evidence; and (3) the curative action taken by the court. *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993). The Delaware Supreme Court considers similar factors when determining whether a trial court should have declared a mistrial due to an unsolicited prejudicial remark by a witness: (1) the nature, persistency, and frequency of the emotional display; (2) whether the outburst created a likelihood that the jury would be misled or prejudiced; (3) the closeness of the case; and (4) the curative or mitigating action taken by the trial judge. *See Pena v. State*, 856 A.2d 548, 550-51 (Del. 2004); *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997).

Here, the Delaware Supreme Court reasonably applied established federal law in affirming the Superior Court's denial of Petitioner's motion for a mistrial after Harrigan's unsolicited

statement.  Harrigan's single remark was neither pronounced nor persistent, and did not create a likelihood of prejudice, particularly given the State's substantial circumstantial case of Petitioner's guilt.  Indeed, as noted by the Superior Court, the statement was insufficient to create a strong enough inference that the shooting was retaliatory.  (D.I. 30-3 at 231-32).  The Superior Court also took immediate steps to cure any prejudice.  For instance, before the jury heard additional testimony, the Superior Court instructed it "to disregard entirely the answer of [Harrigan] to the last question asked of him before the objection was made.  So, as with any other evidence or question that I may order you not to consider at all in this trial, you are not to consider, give any weight whatsoever, the answer to the question last asked by the prosecutor.  It is stricken."  (D.I. 30-3 at 238).  Finally, the Delaware Supreme Court's determination that the Superior Court's curative instruction was sufficient to cure any potential for prejudice resulting from Harrigan's remark is consistent with Supreme Court precedent that juries are presumed to follow the instructions given by the trial court.  *See Richardson v. Marsh*, 481 U.S. 200, 206-07 (collecting cases where the Supreme Court has presumed that a jury would follow its instructions to disregard evidence or use evidence for a limited purpose).

Based on the foregoing, the Court concludes that the Delaware Supreme Court did not unreasonably apply clearly established federal law in holding that the Superior Court did not abuse its discretion in denying Petitioner's request for a mistrial regarding Harrigan's statement.  Accordingly, the Court will deny Claim Three for failing to satisfy the standard of § 2254(d).

### D.     Claim Four: Superior Court's Failure To Declare A Mistrial After Spectators Comments To Jurors

In Claim Four, Petitioner contends that the Superior Court abused its discretion by not declaring a mistrial after two trial spectators interacted with several jurors.  Petitioner asserts that

the jurors could have felt pressure from the encounter.  The following summary of the incident

provides relevant background information for this Claim.

> [A]fter the first full day of trial, two spectators at the trial
> encountered several jurors while standing near the courthouse
> elevators. The bailiff did not allow the jurors to get on the same
> elevator as the spectators and instead sent the jurors down on the
> freight elevator. When the jurors got off the elevator, Juror No. 10
> stated that he noticed the same two spectators "eyeballing" him.
> Juror No. 7 stated that as he walked past the two men, one of them
> tried to get the juror's attention by saying, "Hey, you. Hey buddy."
> The juror kept walking without responding, and the encounter
> ended. There was no actual exchange of words or introduction of
> new factual information about the case.
>
> The morning after this occurrence, the trial judge conducted an
> individual *voir dire* with each juror in the presence of the prosecutor
> and defense counsel. At the end of the *voir dire*, both defense counsel
> moved for a mistrial, which the judge denied.

*Dixon*, 2014 WL 4952360, at *2.

On direct appeal, Petitioner argued that the Superior Court erroneously denied his motion

for a mistrial related to the spectator/juror interaction.  After noting that granting a mistrial is an

extraordinary remedy, the Delaware Supreme Court found that the trial judge had not abused his

discretion because the judge had conducted a thorough *voir dire* of each juror.  *Dixon*, 2014 WL

4952360, at *3-4.  The Delaware Supreme Court also found that "the minimal contact between the

jurors and the spectators d[id] not amount to improper influence and actual prejudice to the

impartiality of the juror's deliberations."  *Id*. at *4.  The Delaware Supreme Court concluded that

"[Petitioner] has not shown that there were egregious circumstances of juror taint that were

inherently prejudicial to give rise to the presumption of prejudice."  *Id*.  Given this adjudication,

the Court must determine if the Delaware Supreme Court's decision was either contrary to, or an

unreasonable application of, clearly established federal law.

18

As previously discussed, the clearly established federal law governing the Superior Court's decision to not declare a mistrial is the standard under *Perez* and its progeny. Claim Four, however, also implicates Petitioner's due process right to a fair and impartial jury. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The jury's "verdict must be based upon the evidence developed at the trial," *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), and must be "free from external causes tending to disturb the exercise of deliberate and unbiased judgment." *Mattox v. United States*, 146 U.S. 140, 149 (1892). "[N]ot every exposure to extra-record information about the case will require a new trial." *United States v. Gilsenan*, 949 F.2d 90, 97 (3d Cir. 1991). If a trial court becomes aware of juror bias, due process requires the court to conduct a hearing to determine the circumstances, the impact upon the juror, and whether the contact or alleged bias was prejudicial. *Remmer*, 347 U.S. 227, 229, 230 (1954). In *Smith v. Phillips*, the Supreme Court made it clear that, although no court has the ability to "shield jurors from every outside contact or influence that might theoretically affect their vote[s]," nonetheless, the trial court has a duty to take steps to ensure that the jury votes solely on the basis of the evidence presented at trial. *Smith*, 455 U.S. at 217. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith*, 455 U.S. at 217. The *Smith* Court went on to hold that a post-trial hearing is sufficient to decide juror partiality in both the state and federal courts, and that in a federal habeas proceeding, the factual finding made by the state trial court in such a hearing is entitled to the presumption of correctness. *Id*. at 218.

In Petitioner's case, although the Delaware Supreme Court did not cite to United States Supreme Court precedent when it denied Claim Five, it relied on Delaware caselaw articulating the proper federal standard applicable to mistrial claims based on alleged juror bias.[4]  *See Fahy*, 516 F.3d at 196.  The Delaware Supreme Court also relied upon its case, *Flonnery v. State*, 778 A.2d 1044, 1054 (Del. 2001), and noted that a presumption of prejudice will arise where the defendant proves a reasonable probability of juror taint from egregious circumstances.[5]  Given these circumstances, the Court concludes that the Delaware Supreme Court's decision is not contrary to clearly established federal law.

The Delaware Supreme Court's decision also did not involve an unreasonable application of clearly established law to the facts of Petitioner's case.  A trial court has discretion to decide whether to declare a mistrial based on juror exposure to extraneous information.  *See United States v. Urban*, 404 F.3d 754, 777 (3d Cir. 2005).  "[T]he trial judge has some discretion in determining the nature and extent of the hearing into possible prejudicial communications."  *United States v. Boscia*, 573 F.2d 827, 831 (3d Cir. 1978).  The Third Circuit has acknowledged the "considerable latitude" that trial judges must be afforded to use *voir dire* to determine prejudice where allegations arise of extraneous influence upon the jury.  *Gov't of Virgin Islands v. Dowling*, 814 F.2d 134, 137 (3d Cir. 1987).  In the context of allegations of juror misconduct, the Third Circuit has "deferred to [the trial court's] evaluations of juror misconduct in cases where the court conducted

---

[4]     For instance, the Delaware Supreme Court relied upon *Sheeran v. State*, 526 A.2d 886 (Del. 1987), which, in turn, cited *McDonald v. Pless*, 238 U.S. 264, 267 (1915), *Patterson v. Colorado*, 205 U.S. 454, 462 (1907), and *Mattox*, 146 U.S. at 149.

[5]     In turn, *Flonnery* cited *Mattox* and the Delaware Supreme Court's decision, *Hughes v. State*, 490 A.2d 1034 (Del. 1985).  In *Hughes*, the Delaware Supreme Court cited United States Supreme Court precedent that generally requires the defendant to show prejudice from an allegedly biased jury and demonstrate that certain egregious circumstances raise a presumption of prejudice.

individualized *voir dire* examinations" and where the trial court's questioning indicated that the juror's misconduct was "rather inconsequential." *United States v. Console*, 13 F.3d 641, 666-68 (3d Cir. 1993).

The record in this case demonstrates that the Superior Court fulfilled its duty to investigate and evaluate the extraneous influence on the jurors by conducting a thorough *voir dire*.  In the presence of all counsel, the Superior Court questioned the jurors individually to determine whether their interaction with the spectators would affect their ability to be fair and impartial jurors. (D.I. 30-3 at 128-189).  The Superior Court also questioned the jurors concerning the effect of discussions between jurors about the incident.  (*Id*.).  At the conclusion of the *voir dire*, the Superior Court listened to arguments put forth by both parties regarding the necessity for declaring a mistrial.  (*Id*. at 189-194).  The Superior Court then concluded that "the facts developed [do not] warrant the remedy of a mistrial." (D.I. 30-3 at 194).  The Superior Court explained that the events did not "rise" to the level of intimidation, and that the brief incident involved a visual exchange without any exchange of information.  (*Id*. at 195-196).

On this record, the Delaware Supreme Court's conclusion that the minimal contact between the jurors and the spectators did not improperly influence the jurors was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  As a result, the Delaware Supreme Court reasonably applied clearly established federal law in holding that the Superior Court did not abuse its discretion in denying Petitioner's request for a mistrial regarding the spectators interaction with the jurors.  Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d).

**E.      Claims Five and Six:  Procedurally Barred Ineffective Assistance Claims**

In Claim Five, Petitioner contends that appellate counsel provided ineffective assistance by failing to argue that there was insufficient evidence to support his conviction.  He also contends that post-conviction counsel provided ineffective assistance in his first Rule 61 proceeding for failing to assert that appellate counsel was ineffective for not presenting an insufficient evidence claim on direct appeal.  In Claim Six, Petitioner contends that appellate counsel was ineffective for not citing to the trial transcripts when presenting an issue on appeal because that failure caused the Delaware Supreme Court to hold that the issue had been waived.

The first step of the Court's inquiry is to determine if Petitioner exhausted state remedies for these two Claims.  Petitioner presented Claims Five and Six in his initial *pro se* Rule 61 motion.  Although appointed post-conviction counsel did not specifically identify the instant two Claims in the amended Rule 61 motion he filed with the Superior Court, post-conviction counsel reviewed the Claims and stated that "[o]ther arguments raised by [Petitioner] such as . . . failing to raise issues on appeal . . . fail to show that the outcome of the trial would have been different but for the action or inaction of counsel."  *Dixon*, 2016 WL 5929251, at *3.  The Superior Court reviewed Petitioner's *pro se* claims and appointed post-conviction counsel's amended Rule 61 motion, and found that the "contentions not addressed by [Petitioner's] appointed post-conviction counsel are without merit for the reasons well stated in [Petitioner's] Amended Motion for Postconviction Relief."  *Id*.  Appointed post-conviction counsel filed a post-conviction appeal and the appellate brief did not include any reference to the instant two Claims.  (*See* D.I. 30-7).  After the Delaware Supreme Court affirmed the denial of his amended Rule 61 motion, Petitioner filed a second *pro*

*se* Rule 61 motion.  His second Rule 61 motion did not assert Claims Five and Six.[6]  *See State v. Dixon*, 2020 WL 5289927, at *2 (Del. Super. Ct. Sept. 4, 2020); (D.I. 30-21).

The foregoing record demonstrates that Petitioner did not exhaust state remedies for Claims Five and Six because he did not present the Claims to the Delaware Supreme Court on post-conviction appeal.  At this juncture, any attempt by Petitioner to raise these two Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1).  *See Kostyshyn v. Metzger*, 2018 WL 1383237, at *7 (D. Del. Mar. 19, 2018).  Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant arguments.  Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant arguments.  Given these circumstances, Claims Five and Six are procedurally defaulted, and the Court cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

Petitioner contends that he defaulted the instant two Claims because post-conviction counsel failed to include them in his amended Rule 61 motion.  To the extent this allegation is an

---

[6]     Petitioner's second Rule 61 motion asserted the following five claims:  (1) there is newly discovered evidence that the expert witness who testified had been charged and pled guilty to falsifying work records; (2) post-conviction counsel was ineffective for not arguing that trial counsel was ineffective for not challenging the admissibility of the expert's testimony; (3) post-conviction counsel was ineffective for not arguing that defense counsel should have moved to suppress the illegal suggestive photo lineup; (4) post-conviction counsel was ineffective for failing to argue that trial counsel was ineffective for not appealing the judgment of acquittal; and (5) Petitioner's due process rights were violated because the State did not prove every element of his second degree assault and PFDCF convictions beyond a reasonable doubt.  *See Dixon*, 2020 WL 5289927, at *2; (D.I. 30-21 at 4).

attempt to demonstrate cause for his default under *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012), the attempt is unavailing. In *Martinez,* the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may in some circumstances establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id*. at 12, 16-17. The Third Circuit has explained the application of *Martinez* in habeas cases:

> *Martinez* recognizes a narrow exception to the doctrine of procedural default: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." This exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," and that 2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*."

*Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id*. at 938 (quoting *Miller-El*, 537 U.S. at 336). To demonstrate that post-conviction counsel's ineffectiveness caused the procedural default, a petitioner must show that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard, *i.e.* "that his state post-conviction counsel's performance fell below an objective standard of reasonableness." *Workman*, 915 F.3d at 941.

Here, *Martinez* does not apply to excuse Petitioner's default of Claims Five and Six, because the default did not occur at the initial-review collateral proceeding. Rather, the default occurred when the Claims were not raised on post-conviction appeal. Significantly, although Petitioner's post-conviction counsel determined that Claims Five and Six did not have merit and

did not advocate for them in the amended Rule 61 motion, post-conviction counsel included the reasons for his determination in the amended Rule 61 motion that he filed with the Superior Court. In turn, the Superior Court reviewed the instant two Claims as presented in both Petitioner's original *pro se* Rule 61 motion and the counseled amended Rule 61 motion, and found the Claims to be "without merit for the reasons well stated in [Petitioner's] Amended Motion For Postconviction Relief." *Dixon*, 2016 WL 5929251, at *3. As the Superior Court reviewed and denied Claims Five and Six on the merits, Petitioner's failure to exhaust the claims occurred at the post-conviction appeal level. Thus, his default is not excused under *Martinez*.[7]

Petitioner does not provide any other cause for his default of Claims Five and Six. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims Five and Six as procedurally barred from habeas review.

---

[7]     Even if the *Martinez* rule were to be liberally interpreted to apply here and, particularly, to a post-conviction attorney's failure to raise claims on post-conviction appeal, the Court would not excuse Petitioner's default because he has failed to demonstrate that the Claims have "some merit." In Claims Five and Six, Petitioner restates the ineffective assistance of trial counsel arguments he presented in his initial *pro se* Rule 61 motion without providing anything to demonstrate that these two allegations have some merit. When Petitioner's instant allegations are viewed in context with the explanation provided in the counseled amended Rule 61 motion (D.I. 31-20 at 2 in *Dixon*, Civ. A. No. 17-1402-MN) and the Superior Court decision denying his first Rule 61 motion, the Court cannot conclude that they have "some merit." Moreover, Petitioner's summary and conclusory assertion that post-conviction counsel erred by not presenting these allegations on post-conviction appeal does not satisfy his burden to demonstrate that post-conviction counsel's representation was objectively unreasonable. This is not a case in which post-conviction counsel wholly failed to raise any claims of ineffective assistance of counsel. Rather, post-conviction counsel included Claims Five and Six in the amended Rule 61 motion along with his reasons for finding them meritless, and Petitioner has failed to overcome the presumption that counsel made a reasonable strategic decision not to pursue these allegations on post-conviction appeal.

### F.      Claim Seven:  Erroneous Admission of Two Photographic Lineups

After the shooting, the police showed Brown two photographic lineups and asked him to identify the shooter.  (D.I. 30-3 at 105-06).  Brown indicated that Petitioner's complexion and beard were similar to the shooter's.  (D.I. 30-3 at 106-07, 109, 111).  The officer who took Brown's recorded statement testified that Brown had "indicat[ed] that No. 3 appeared to be the complexion similar to the person shooting."  (D.I. 30-3 at 106).  Petitioner objected, asserting Brown "testified that the person in the photograph has a similar complexion and beard, but he doesn't identify [Petitioner] as the shooter."  (*Id*. at 107).  The Superior Court concluded that the objection went to weight and admissibility, and entered the lineup into evidence.  (*Id*. at 108); *see Dixon*, 2014 WL 4952360, at *1.

Harrigan also reviewed some photographic lineups and indicated Petitioner was the man with whom he had argued at the Rebel nightclub.  (D.I. 30-3 at 264-66).  The officer who took Harrigan's statement explained twice that Harrigan identified Petitioner not as the shooter, but as the man with whom he had argued at the Rebel.  (*Id.* at 265-66).  Petitioner did not object to Harrigan's photographic lineup evidence.

In Claim Seven of his Amended Petition, Petitioner contends that the Superior Court erred by admitting the testimony regarding Brown's and Harrigan's identifications from the two photographic lineups because the identifications were confusing, impermissibly suggestive, and prejudicial.  (D.I. 33 at 22-23).  In his original Petition, Petitioner does not directly challenge the admission of the photographic lineup evidence.  Rather, he contends that defense counsel was ineffective for failing to file a motion to suppress the two photo lineups.  (D.I. 3 at 10).  Although the State only addresses the ineffective assistance of counsel argument in its Answer, the Court will exercise prudence and address both of Petitioner's arguments concerning the photo lineup identifications.

On direct appeal, Petitioner argued that the Superior Court had erred by permitting the admission of both identifications.  The Delaware Supreme Court reviewed the Superior Court's decision to admit Brown's identification for an abuse of discretion.  Because Petitioner had not objected to the admission of Harrigan's identification during the trial, however, the Delaware Supreme Court only reviewed Petitioner's argument regarding Harrigan's identification for plain error as required by Delaware Supreme Court Rule 8.  Although the Delaware Supreme Court's review of the Superior Court's decision regarding Harrigan's identification under Delaware Supreme Court Rule 8 would normally trigger a procedural default analysis on habeas review, the Court will exercise its discretion under § 2254(b)(2) and perform a merits review for both of Petitioner's instant challenges to the lineup identifications.

Claims alleging errors in state evidentiary rulings are only reviewable on habeas corpus if the evidentiary rulings rise to the level of a due process violation.  *See Estelle*, 502 U.S. 62, 67-8 (1991).  A petitioner establishes a due process violation by showing that the evidentiary error was so pervasive that he was denied a fundamentally fair trial.  *Biscaccia v. Attorney General of Sate of N.J*, 623 F.2d 307, 312 (3d Cir. 1980).  Thus, the portion of Claim Seven challenging the admission of the photo lineup evidence will only warrant habeas relief if the Superior Court's evidentiary ruling was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair.  *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

After reviewing the record, the Court concludes that the Delaware state courts reasonably concluded that the admission of the identification evidence did not render Petitioner's trial fundamentally unfair.  Contrary to Petitioner's assertion, the identification evidence was not confusing.  Brown identified Petitioner as resembling the shooter and Harrington identified him as the man with whom he had argued.  The officers who took the statements reiterated these links.

27

As a result, the lineups provided circumstantial evidence that Petitioner was the shooter for the jury to weigh with the rest of the evidence.   Under well-settled Delaware law, photo lineup evidence that circumstantially links a defendant to a crime is admissible even if it falls short of identifying the defendant as the perpetrator.   *See e.g., State v. Monroe*, 2014 WL 934446, at *3 (Del. Mar. 6, 2014) (noting admissibility of lineup where defendant's photograph was "most like" a man seen near the crime).   Given these circumstances, the Court will deny the portion of Claim Seven directly challenging the admission of the lineup identifications for failing to assert an issue cognizable on federal habeas review.

Petitioner also asserts that defense counsel provided ineffective assistance by not filing a motion to dismiss or suppress the photo lineups.   Petitioner presented Claim Seven's ineffective assistance of counsel argument ("IAC argument") in his initial *pro se* Rule 61 motion.   Although appointed post-conviction counsel identified Claim Seven's IAC argument in the amended Rule 61 motion he filed with the Superior Court, post-conviction counsel stated that the challenge lacked merit.   *Dixon,* 2016 WL 5929251, at *2; (*see* D.I. 31-20 at 2 in Dixon, Civ. A. No. 17-1402-MN). Specifically, post-conviction counsel asserted that, although "the issue should have been raised pre-trial," "no prejudice can be shown [because] it is an unsupported conclusion that" a motion to suppress/dismiss "would have been granted."   (*Id.*).   Post-conviction counsel also stated that Petitioner "was never identified as the shooter."   (*Id.*).

The Superior Court reviewed Petitioner's *pro se* Rule 61 motion and appointed post-conviction counsel's amended Rule 61 motion, and found that the "contentions not addressed by [Petitioner's] appointed post-conviction counsel are without merit for the reasons well stated in [Petitioner's] Amended Motion for Postconviction Relief."   *Dixon,* 2016 WL 5929251, at *2. Appointed post-conviction counsel filed a post-conviction appeal and the post-conviction appellate brief did not include any reference to Claim Seven's IAC argument.   (*See* D.I. 30-7).   After the

Delaware Supreme Court affirmed the denial of his amended Rule 61 motion, Petitioner filed a second *pro se* Rule 61 motion.  His second Rule 61 motion did not assert the IAC argument in Claim Seven.  *See supra* at Section III.E.n.6.

This record demonstrates that Petitioner did not exhaust state remedies for the IAC argument in Claim Seven, because he did not present them to the Delaware Supreme Court on post-conviction appeal.  As Petitioner would be barred from presenting the instant IAC argument in a new Rule 61 motion at this point in time, the instant argument is procedurally defaulted.  *See supra* at Section III.E.  Petitioner's attempt to establish cause for his default by blaming post-conviction counsel for not presenting the instant argument in the amended Rule 61 motion is unavailing.  As previously discussed, *Martinez* does not apply to excuse Petitioner's default of Claim Seven, because the default occurred at the post-conviction appeal level and not during the initial collateral proceeding.  Significantly, although Petitioner's post-conviction counsel determined that Claim Seven did not have merit and did not advocate for the Claim in the amended Rule 61 motion, post-conviction counsel included the reason for his determination in the amended Rule 61 motion that he filed with the Superior Court.  In turn, the Superior Court reviewed the instant Claim as presented in both Petitioner's original *pro se* Rule 61 motion and the counseled amended Rule 61 motion, and found the Claim to be "without merit for the reasons well stated in [Petitioner's] Amended Motion For Postconviction Relief."  *Dixon*, 2016 WL 5929251, at *3.  Because the Superior Court reviewed and denied the IAC argument in Claim Seven on the merits, Petitioner's failure to exhaust the instant IAC Claim occurred at the post-conviction appeal level.  Thus, his default is not excused under *Martinez*.[8]

---

[8]    Even if the *Martinez* rule should be liberally interpreted as applying to this situation and, particularly, to a post-conviction attorney's failure to raise claims on post-conviction appeal, the Court would not excuse Petitioner's default because he has failed to demonstrate that the instant IAC argument has "some merit.  As just discussed, the Court

Petitioner does not provide any other cause for his default of the IAC argument in Claim Seven. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Thus, the Court will deny the IAC argument in Claim Seven as procedurally barred from habeas review.

Accordingly, the Court will deny Claim Seven in its entirety.

## V.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

---

concludes that the admission of the photographic identification evidence did not deprive Petitioner of his due process rights. Therefore, trial counsel did not provide ineffective assistance by failing to file a meritless motion to suppress/dismiss the identification evidence. Moreover, Petitioner's summary and conclusory assertion that post-conviction counsel erred by not presenting the instant allegation on post-conviction appeal does not satisfy his burden to demonstrate that post-conviction counsel's representation was objectively unreasonable. Significantly, this is not a case in which post-conviction counsel wholly failed to raise any claims of ineffective assistance of counsel. Rather, post-conviction counsel included Claim Two in the amended Rule 61 motion along with his reasons for finding it meritless and Petitioner has failed to overcome the presumption that counsel made a reasonable strategic decision not to pursue this allegation on post-conviction appeal.

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court will not issue a certificate of appealability.

## VI.    **<u>CONCLUSION</u>**

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability.   An appropriate Order shall issue.